UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THOMAS THOMPSON, DAISY CASTILLO,
ELLEN CARROLL, DAWN COOK, BARBARA
BARRETO, SUSAN CONGDEN, KATHY
HAWKS, DONNA VASQUEZ, and SEMEN
ROZENBERG individually and on behalf of all
others similarly situated,

                    Plaintiffs,

    -against-

BRIAN J. WING in his official capacity as the
Commissioner of the New York State Office of
Temporary and Disability Assistance; ANN M.
VENEMAN in her official capacity as the
Secretary of Agriculture,

                    Defendants.
-------------------------------------------------------------X

**FILED**
IN CLERKS OFFICE
U.S. _____ COURT ED N.Y:

★ SEP 17 2003 ★

P.M. _____
TIME A.M. _____

**Memorandum and Order**
98-CV-7628 (JMA)

APPEARANCES:
        CONSTANCE P. CARDEN, ESQ.
        JANE GREENGOLD STEVENS, ESQ.
        NEW YORK LEGAL ASSISTANCE GROUP
        130 EAST 59TH STREET
        NEW YORK, NY 10022

        BARBARA WEINER, ESQ.
        GREATER UPSTATE LAW PROJECT
        119 WASHINGTON AVENUE
        ALBANY, NEW YORK 12210

        WILLIAM H. BRISTOW, III
        ASSISTANT ATTORNEY GENERAL
        120 BROADWAY
        NEW YORK, NY 10271

        KEVIN P. MULRY
        ASSISTANT UNITED STATES ATTORNEY
        610 FEDERAL PLAZA
        CENTRAL ISLIP, NY 11722

1

**AZRACK, United States Magistrate Judge:**

This class action was brought by plaintiffs seeking declaratory judgment and injunctive relief in connection with defendants' implementation of the federal Treasury Offset Program. Both sides of this litigation were represented by experienced counsel, and after extensive discovery counsel engaged in detailed negotiations toward a settlement proposal. Following a fairness hearing held on September 4, 2003, and pursuant to Federal Rule of Civil Procedure 23(e), this court finds the stipulation of settlement in the instant class action to be fair, reasonable, adequate and in the best interests of the class. Accordingly, the stipulation of settlement is approved.

## BACKGROUND

A. Background and Procedural History

In 1998, plaintiffs brought this class action seeking declaratory and injunctive relief on behalf of themselves and as representatives of all persons who, without adequate notice or meaningful opportunity to be heard, had or will have their federal income tax refunds taken to pay debts allegedly owed to the Department of Agriculture ("USDA") for over-issuances of food stamp benefits received through the New York State Office of Temporary Disability Assistance ("OTDA").[1] Generally speaking, plaintiffs' made two allegations against defendants. First,

---

[1]The Secretary of the Treasury may intercept federal income tax refunds and other federal payments to recover outstanding debts owed by individuals to federal agencies, when such agencies certify that the debts are "past due and legally enforceable." 31 U.S.C. § 3720A. However, due process under the 5th and 14th Amendments, federal statutory and regulatory requirements mandate certain notice and hearing protections are afforded by the government in enforcing such measures. *See* 31 U.S.C. § 3720A; 31 U.S.C. § 3716; 7 U.S.C. § 2022; 31 C.F.R. § 285.2; 31 C.F.R. § 285.4; 7 C.F.R. § 273.18(b); 7 C.F.R. § 273.18(d); 7 C.F.R. § 273.18(g)(5).

2

plaintiffs' allege that defendants failed to provide adequate notice of the offset or an opportunity for an initial adjudicatory hearing on the underlying debts, as required by federal law. Second, plaintiffs' allege that defendants' pre-offset notices were inadequate for, *inter alia*, failing to specifically identify which federal payment would be subject to offset and the amount of the offset, failing to advise of grounds to challenge the state agency's determination that the debt is referable for offset, and threatening the addition of "penalties and other charges" to the underlying claim referred for offset.

The case proceeded with preliminary discovery, resulting in plaintiffs' motion for partial summary judgment and defendants' cross-motion for partial summary judgment; both motions were denied. Extensive discovery followed during which the parties engaged in numerous, detailed settlement conferences before the court. A proposed settlement was reached, and notices to class plaintiffs were sent out informing them of the opportunity to be heard in writing and/or in person at the fairness hearing, scheduled for September 4, 2003. At the hearing, no objections to the settlement terms were made.

B. Settlement Terms

The detailed settlement announces revisions to the federal Treasury Offset Program ("TOP") that have already been implemented, covenants relating to four categories of plaintiffs detailing the redress in each case, and provisions for administrative review of challenges to alleged over-issuances. The salient features of the agreement are as follows. First, the agreement recognizes that new federal regulations have been issued by USDA since the commencement of

3

this action regarding the "Food Stamp Program: Recipient Claim Establishment and Collection Standards," codified at 7 C.F.R. Parts 272 and 273. The parties have also negotiated a revised 60-day notice of OTDA's intent to refer an alleged overpayment to TOP. Moreover, OTDA has made changes to the Cash Management System ("CAMS") and Welfare Management System ("WMS"), which include: (1) creation of a field for the entry of the date of discovery of discrepant data leading to the establishment of the Food Stamp overpayment claim; (2) computer systems changes to transfer the reason for overpayment of Food Stamps information from WMS to CAMS; and (3) designation of a field for the entry of the date the first demand letter/notice of over-issuance was sent.

Second, the agreement categorizes the class plaintiffs into four groups, and redresses each group accordingly. Group 1 plaintiffs will receive an automatic refund of any federal payment offset.[2] Group 2 plaintiffs will receive a re-notice of their debt referred for offset, which notice includes the balance now due, period of overpayment, and their right to seek review.[3] Group 3 plaintiffs will receive a revised 60-day notice, detailing the amount overpaid, period of

---

[2]Group 1 includes individuals who had a Food Stamp overpayment debt that was certified by OTDA in 1996, 1997, 1998, and/or 1999 and who had their federal income tax refund and/or other federal payment offset in 1997, 1998, 1999, and/or 2000 and: (1) whose overpayment period ended more than nine years prior to January 1 of the year of their offset; or (2) who were current recipients of Food Stamps at the time the overpayment claim was certified to TOP; or (3) in the case of Inadvertent Household Error and Agency Error claims, that have an overpayment period of more than 12 months from the date of discovery.

[3]Group 2 includes individuals who had a Food Stamp overpayment debt that was certified by OTDA in 1996, 1997, 1998, and/or 1999 and who had their federal income tax refund and/or other federal payment offset in 1997, 1998, 1999, and/or 2000 and who are not within Group 1.

4

overpayment, and procedure to seek review of the alleged overpayment.[4]  Group 4 plaintiffs will also receive a revised 60-day notice of the OTDA's intent to refer a debt for offset.[5]

Finally, the agreement details the procedure for OTDA's administrative review of an individual's challenge to the re-notice or 60-day notice of its intent to refer a debt for offset.

## DISCUSSION

Federal Rule of Civil Procedure 23(e) mandates that a class action lawsuit not be officially settled "without the approval of the court." Fed. R. Civ. P. 23(e).  While Rule 23(e) does not announce any standard of review, prior to approval the district court must find that the terms of the settlement are fair, adequate, and reasonable, and not a product of collusion. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir 2001); *see also, Joel A. v. Guiliani*, 218 F.3d 132, 139 (2d Cir 2000); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir 1995).  Moreover, since the district court is most familiar with the litigants and the strengths and weaknesses of the matter before it, it is in the best position to assess whether the settlement is a

---

[4]Group 3 includes individuals whose debts were listed on CAMS / WMS prior to the implemented changes.  However, individuals will be entirely removed from the list of Food Stamp overpayment claims, if such claims: (1) are more than nine years old; (2) do not comply with 7 C.F.R § 273.18(n)(1)(ii), 7 C.F.R. § 273.18(n)(1)(iv)(A), 7 C.F.R. § 273.18(n)(4)(ii)(B)(1), and 7 C.F.R. § 273.18(g)(1)(i); and/or (3) are Inadvertent Household Error or Agency Error claims that have an overpayment period of more than 12 months from the date of discovery.

[5]Group 4 includes individuals whose debts were listed on CAMS / WMS after the changes to those systems had been implemented.  Group 4 individuals whose claims do not comply with the following statutory provisions will be removed from the list of Food Stamp overpayment claims: 31 U.S.C. § 3716(e)(1) and 31 C.F.R. § 901.3(a)(4); 7 C.F.R. § 273.18(n)(1)(ii); 7 C.F.R. § 273.18(n)(1)(iv)(A); 7 C.F.R. § 273.18(n)(4)(ii)(B)(1); 7 C.F.R. § 273.18(g)(1)(i); and/or 7 C.F.R. § 273.18(c)(1)(ii); and 18 N.Y.C.R.R. § 387.19(b)(1)(i).

reasonable compromise and therefore the court should be afforded considerable deference.

*Maywalt*, 67 F.3d at 1079 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir 1982), *cert. denied* sub. nom. *Coyne v. Weinberger*, 464 U.S. 818 (1983)).

In assessing the adequacy of a class action settlement, the court must examine both the negotiation process leading up to the settlement and the settlement's substantive terms. *D'Amato*, 236 F.3d at 85 (citing *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir 1983)). The court's inquiry into the negotiation process requires that the settlement is a product of "arm's-length negotiations and that plaintiff's counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Weinberger*, 698 F.2d at 74 (citations omitted). The court's determination of the settlement's substantive terms as fair, reasonable and adequate is made using the *Grinnel* factors. *See D'Amato*, 236 F.3d at 86. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 463 (2d Cir 1974), abrogated on other grounds by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir 2000).

An abuse of discretion standard is applied in reviewing a district court's approval of a class settlement. *D'Amato*, 236 F.3d at 85, (citing *Grinnel Corp.*, 495 F.2d at 455); *see also Joel A. v. Guiliani*, 218 F.3d at 139. "Yet to survive appellate review, the district court must show it has explored comprehensively all relevant factors." *Malchman*, 706 F.2d at 434.

After careful examination of the entire record, the *Grinnel* factors, and my first-hand experience with the litigation, I am convinced that the class settlement should be approved as fair, reasonable, adequate and in the best interests of the class.[6]

A. Negotiation Process

The proposed settlement was reached only after extensive and comprehensive fact discovery, as well as vigorous negotiations over which this court presided. The court was most impressed with class counsel Constance Carden, Jane Greengold Stevens and Barbara Weiner's representation. All three have litigated complex constitutional issues in public assistance cases for years and have a wealth of knowledge in the field; consequently, they prosecuted the case ably and aggressively. Indeed, every provision of the settlement was hard-fought from both sides, even items that appeared insignificant to the overall proposal, and both sides' relentless efforts resulted a fair and comprehensive settlement.

Furthermore, the court is satisfied that class counsel and defendants' counsel have not colluded or conspired to manufacture the agreement at issue here. Both sides have ample incentive to bring this matter to a close, and the settlement terms manifest the parties have negotiated reasonable corrective measures she -- revisions to defendants' procedures mitigate the possibility of future harm, and re-noticing provisions grant plaintiffs their due process rights. I therefore find this settlement to be a product of arms-length negotiation.

---

[6]Where a settlement is negotiated prior to the certification of the class by the court, a heightened level of scrutiny is to be applied. *D'Amato*, 236 F.3d at 85. While this standard is not applicable in the instant case, even under a heightened scrutiny, I am satisfied with the settlement.

B.  Substantive Fairness of Settlement Terms

Consideration of all the relevant *Grinnel* factors leads to the conclusion that this settlement is fair, adequate, and reasonable.

(i)    *Complexity, expense and likely duration of the litigation*

A trial of this case would be long and involved, and would therefore come at an enormous cost to the parties.  Preparing for trial, which would include locating a voluminous amount of documents, would be onerous and time-consuming.  At trial, every alleged overpayment, improper withholding of federal income tax refunds, and improper noticing would have to be addressed, resulting in a fact-intensive and document-intensive trial.  Additionally, plaintiff-witnesses are not only situated all over the State, but for many English is not their first language and they would require the use of an interpreter, making a trial in this case protracted and expensive.  This factor clearly favors settlement.

(ii)    *Reaction of the class to the settlement*

"[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re: American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001), (citing *Sala v. National R.R. Passenger Corp.*, 721 F.Supp. 80, 83 (E.D.Pa. 1989)).  Notice of the fairness hearing was sent to all class members inviting written and in-person objections to the settlement terms.  Over 50 letters were received by this court, hundreds of telephone calls were responded to by class counsel Stevens and her staff, and approximately 100 plaintiffs appeared for the hearing.  No objections were made.  Indeed, most

8

of those who attended the hearing had questions about particulars of the settlement or wanted to tell me about their particular situation. This factor, therefore, unambiguously favors settlement.

### (iii)    *Stage of the proceedings and the amount of discovery completed*

In determining the fairness, reasonableness, and adequacy of a settlement, the court need not find that the parties have engaged in extensive discovery; rather, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the court to intelligently appraise the settlement. *In re: American Bank Note Holographics, Inc.*, 127 F.Supp.2d at 425-26.

Here, there has been a substantial amount of discovery. After preliminary discovery, plaintiffs moved for partial summary judgment and defendants cross-moved. After both motions were denied, more extensive discovery followed. Counsel for both sides regularly appeared before this court to resolve multiple discovery disputes, involving a variety of issues. Finally, the case was close to being trial-ready when the parties sought adjournment pending settlement discussions, which discussions often occurred at length before the court. Consequently, I am satisfied with the investigative efforts expended in this case. This factor, therefore, strongly favors settlement.

### (iv)    *Ability of defendants to withstand a greater judgment*

The ability of defendants to withstand a greater judgment is not an issue in this case. Plaintiffs' originally sought declaratory judgment and injunctive relief, and the stipulation of settlement grants to plaintiffs their rights to be noticed and heard prior to deprivation of their property, as well implementing revised procedures for offset referral. Therefore, the settlement

directly addresses the remedies originally sought, and a trial would likely provide no better result.

    (v)    *Reasonableness of the settlement*

The settlement in this case is not merely reasonable, but it fully and completely addresses plaintiffs' grievances, and corrects any deficiencies in defendants' practices without causing undue administrative burden. Plaintiffs' claims of due process violations are redressed by the re-noticing or revised 60-day letters that will be sent out and the opportunity to seek review. Additionally, the settlement covers all plaintiffs, and fairly and reasonably grants to each the rights that are owed them under the law. Finally, and equally significant, the revisions made to defendants' practices as part of this settlement serve to mitigate the possibility of similar violations occurring again. This factor, therefore, clearly favors settlement in this case.

After considering the negotiation process and all relevant *Grinnel* factors as whole, I find that approval of the stipulation of settlement is warranted.

## CONCLUSION

Pursuant to Federal Rule of Civil Procedure 23(e), this court finds the stipulation of settlement to be fair, reasonable, adequate and in the best interest of the class. The stipulation of settlement is approved.

SO ORDERED.

Dated: Brooklyn, New York
      September 16, 2003

                                          JOAN M. AZRACK
                                          UNITED STATES MAGISTRATE JUDGE

10